# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DR. FRANCIS SADOWSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07 C 2973 |
| ) | |
| MED1 ONLINE, LLC, and ) | Judge Marvin E. Aspen |
| JOES DOES 1-10, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Presently before us are Plaintiff Dr. Francis Sadowski's ("Plaintiff") Preliminary Motion for Class Certification, Defendant Med1Online, LLC's ("Med1") Motion to Strike Plaintiff's Preliminary Motion for Class Certification, and Med1's Motion to Dismiss. For the reasons set forth below, we deny all of the above motions.

## BACKGROUND

Plaintiff alleges that on or about October 13, 2006, he received two identical unsolicited faxes advertising Med1's products, despite no prior relationship with Med1. (Compl. ¶¶ 7, 12). He also alleges that Med1 was responsible for sending these faxes and derived economic benefit from them. (*Id.* ¶¶ 9, 10).

On May 2, 2007, Plaintiff filed its first amended complaint in Illinois state court against Med1, a Colorado corporation, and John Does 1-10, the "other natural or artificial persons that were involved in the sending of the facsimile advertisements." (*Id.* ¶¶ 4, 5). His complaint alleged violations of the Telephone and Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), violations of the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and a state law conversion claim.

1

On May 29, 2007, Med1 removed this action to our court.

Since removal, there have been numerous motions filed. Med1 filed a Motion to Dismiss on July 18, 2007. On September 7, 2007, Plaintiff filed a Preliminary Motion for Class Certification. On November 27, 2007, Med1 filed a motion to strike Plaintiff's class certification motion. Also on November 27, 2007, Med1 filed a Rule 68 Offer of Judgment. On December 11, 2007, Plaintiff filed a Motion to Declare Offer of Judgment Ineffective. Finally, on December 13, 2007, we granted the United States's Motion to Intervene.

## ANALYSIS

As indicated above, this Opinion involves three motions: (A) Med1's Motion to Strike Plaintiff's Preliminary Motion for Class Certification; (B) Plaintiff's Preliminary Motion for Class Certification; (C) Med1's Motion to Dismiss. We address each of these motions in turn below.

### A. Med1's Motion to Strike Plaintiff's Preliminary Motion for Class Certification

Med1 argues that we should strike Plaintiff's Motion for Class Certification because it is premature, intended only to delay its pending Motion to Dismiss, and brought in bad faith. We disagree.

First, Federal Rule of Civil Procedure 23(c)(1) requires that a district court decide class certification issues "at an early practicable time." In spite of this language, Med1 argues that its Motion to Dismiss should be decided before Plaintiff's class certification motion because it was filed as Med1's "opening move" and therefore fits within the exceptions listed in *Illinois State Rifle Ass'n v. State of Illinois*, 717 F. Supp. 634, 639 n.12 (N.D. Ill. 1989) (deciding motion to dismiss first because it was defendant's "opening move" and the complaint was "facially suspect in more than one respect that appeared incurable"). However, the Seventh Circuit has rejected this reasoning and

has maintained that "[t]he court must decide promptly whether the case should proceed as a representative action, without regard to the virtues of the plaintiffs' legal theory." *Koch v. Stanard*, 962 F.2d 605, 607 (7th Cir. 1992); *see also Hart v. Sheahan*, 396 F.3d 887, 894 (7th Cir. 2005). Therefore, we must decide Plaintiff's Motion for Class Certification even before turning to Med1's motion to dismiss.

Med1 also contends that we should strike the Motion for Class Certification because it lacks good faith. Med1 argues that Plaintiff filed its motion prematurely only to avoid the risk that Med1 would file a Rule 68 Offer of Judgment, which might render class certification moot. *See White v. Humana Health Plan*, No. 06 C 5546, 2007 WL 1297130, at *6-7 (N.D. Ill. May 2, 2007). Plaintiff's filing may have been a strategic move, however, that is not a reason for striking its motion. This is particularly the case given that Plaintiff could have filed the motion for certification up to ten days after the filing of an Offer of Judgment and still avoided mootness. *See W. Ry. Devices Corp. v. Lusida Rubber Prods. Inc.*, No. 06 C 0052, 2006 WL 1697119, at *2-3 (N.D. Ill. June 13, 2006) (demonstrating the uniform consensus in the Northern District of Illinois that "filing a motion to certify a class during the ten day period after a defendant makes an offer of judgment prevents mootness of a plaintiff's claim").

Finally, Med1 argues that Plaintiff's bad faith is evidenced by the fact that he is unable to establish that anyone other than Plaintiff received the faxes at issue. Regardless of the motivation behind Plaintiff's motion for class certification, if Plaintiff's motion is "premature" (i.e., if Plaintiff cannot establish the class requirements of Rule 23), then the class certification motion will be denied and need not be stricken. Accordingly, Med1's Motion to Strike is denied.

**B. Plaintiff's Preliminary Motion for Class Certification**

Pursuant to Rule 23(a), a class may be certified "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). If the numerosity, commonality, typicality, and adequacy requirements are satisfied, the plaintiff must also demonstrate that the proposed class qualifies under at least one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 391 (N.D. Ill. 2006). Here, Plaintiff seeks certification under Rule 23(b)(3), which permits class actions where "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiff bears the burden of showing that the proposed class meets the requirements for certification and that the "class is indeed identifiable as a class." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *see also Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993); *Hernandez v. Midland Credit Mgmt., Inc.*, 236 F.R.D. 406, 410 (N.D. Ill. 2006). In evaluating a motion for class certification, we do not examine the merits of the case. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 2152-53 (1974); *Retired Chi. Police Ass'n,* 7 F.3d at 598. In addition, we retain broad discretion in determining whether class certification is appropriate given the particular facts of the case. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998); *Cavin*, 236 F.R.D. at 391; *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 298 (N.D. Ill. 2005).

4

Before considering the list of Rule 23 requirements, we must address the implied requirement that the class as defined should be sufficiently identifiable. *Oshana*, 472 F.3d at 513; *see also Alliance to End Represssion v. Rochford*, 565 F.2d 975, 977-78 (7th Cir. 1977) (explaining that a class definition must be "sufficiently definite to permit ascertainment of the class members"); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 949, 2007 WL 4365359, at *2 (N.D. Ill. Dec. 13, 2007); *Pastor v. State Farm Mut. Auto. Ins. Co.*, No. 05 C 1459, 2005 WL 2453900, at *2 (N.D. Ill. Sept. 30, 2005), *aff'd*, 487 F.3d 1042 (7th Cir. 2007). If a class definition requires "the court to conduct an inquiry into the merits of each class member's claim," then it is not sufficiently definite. *Id.*; *see also Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997); *Drinkman v. Encore Receivable Mgmt., Inc.*, No. 07-C-363-S, 2007 WL 4458307, at *2 (W.D. Wis. Dec. 7, 2007).

Plaintiff's class definition includes:

(a) all persons with Illinois fax numbers; (b) who, on or after a date four years (Telephone Consumer Protection Act - Count I), three years (Illinois Consumer Fraud Act - Count II), or five years (conversion - Count III), prior to the filing of this action, (c) were sent advertising faxes by defendant ***(d) and with respect to whom defendant cannot provide evidence of express consent or an established business relationship prior to the transmission of the faxes.***

(Plaintiff's Mot. for Class Cert. at 1) (emphasis added). The fourth requirement of this class virtually mirrors the statutory language of the TCPA and would require the court to investigate – and the Defendants to provide evidence regarding – the relationship between each potential class member and the Defendants. *Kenro*, 962 F. Supp. at 1169. In a practical sense, requiring a court to evaluate the facts surrounding the alleged transmission of each fax would "swamp the benefits of class-action treatment." *Pastor*, 487 F.3d at 1047 (discouraging class-action treatment if a separate evidentiary hearing is required for each class member's claim). Thus, Plaintiff's class is

5

not sufficiently identifiable to permit certification.[1]

In addition, federal courts have denied class certification in cases involving nearly identical class definition language. *See G.M. Sign, Inc.*, No. 06 C 949, 2007 WL 4365359, at *3 (denying class certification based upon a virtually identical class definition because it would improperly require the defendant to show the "lack of defense, namely proof of express permission or invitation prior to the receipt of the fax advertisement"); *Kenro*, 962 F. Supp. at 1169 (holding that an investigation into whether faxes were sent with express invitation or permission requires a factual inquiry with regard to each class member and thus is not permitted); *Forman*, 164 F.R.D. 400 (denying class certification based on identical language because it would improperly require the court to delve into liability issues).

Plaintiff argues that we should certify the class nonetheless because other courts have certified class actions under the TCPA. However, we note that many of Plaintiff's cases involve state law and also that none of these cases are binding on this court. In addition, Plaintiff argues that class certification here is proper because defendants have the burden of proving an established business relationship under the TCPA. We agree with Plaintiff's argument that defendants have the burden of proving an established business relationship under the TCPA. *In re Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 & the Junk Fax Prevention Act of 2006*, 21 F.C.C.R. 3787, 3794 (April 6, 2006) [hereinafter "FCC Order"]. However, the issue

---

[1] While we treat this issue as failure to define a sufficiently identifiable class, we also note that some courts have addressed this issue as a failure to meet the "commonality" and "typicality" requirements of Rule 23. *See Kenro*, 962 F. Supp. at 1169; *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995). In addition other courts have treated it as a failure to meet the predominance requirement of Rule 23(b)(3). *Kenro*, 962 F. Supp. at 1169 n.6. Regardless of the precise name given to the requirement, however, Plaintiff's alleged class is improper.

presented at this juncture is not whether or not Med1 will have the burden of proof regarding its defenses, but instead whether Plaintiff's alleged class is ascertainable and whether class treatment is the proper vehicle for determining liability in this case. Because the determination of Plaintiff's class would involve highly fact-specific inquiries into the circumstances surrounding the transmission of each fax, we find that the class is not sufficiently identifiable and deny Plaintiff's Preliminary Motion for Class Certification.

### C. Med1's Motion to Dismiss

Med1 argues that we should dismiss Plaintiff's complaint because: (1) the TCPA violates the Due Process Clause and (2) the faxes at issue were not "unsolicited advertisements" under the TCPA. In addition, Med1 argues that if we dismiss Plaintiff's TCPA claim, we should also decline to exercise supplemental jurisdiction over Plaintiff's ICFA and conversion claims. We address these arguments in turn below.

#### 1. Standard of Review

A court may grant a motion to dismiss under Federal Rule of Procedure 12(b)(6) when "it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). The purpose of a motion to dismiss under 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

#### 2. Due Process

Med1 argues that Plaintiff's complaint should be dismissed because the TCPA's $500 statutory damage award is disproportionate to the offense and therefore violates the Due Process Clause of the Fifth Amendment.

The TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, any unsolicited advertisement." 47 U.S.C. § 227(b)(1)(c). The statute authorizes a court to impose the greater of actual damages or $500 for each violation. *Id.* § 227(b)(3). In addition, the court has discretion to award up to $1500 for knowing or willful violations. *Id.* The congressional purpose behind this statute was two-fold. First, it was aimed at deterring the practice of shifting advertising costs to unwilling recipients, such as the cost of the materials used to print unsolicited faxes. *Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 WL 129052, at *2 (N.D. Ill. Jan 11, 2007); *see also* H.R. Rep. 102-317, at 10. Second, Congress recognized the unquantifiable harmful effects of occupying the recipient's fax machine, "such as business interruption costs and wasted time." *Phillips*, No. 06 C 4968, 2007 WL 129052, at *2; *see also* H.R. Rep. 102-317, at 10.

The Supreme Court has held that a statutory damages provision, such as the one at issue, only violates Due Process if it is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, Iron Mount & S. R.R. Co. v. Williams*, 251 U.S. 63, 67 (1919); *see also Arrez v. Kelly Servs., Inc.*, 522 F. Supp. 2d 997, 1008 (N.D. Ill. 2007). "In determining whether the penalty is grossly disproportionate, 'the fine need only bear some relationship to the offense's gravity; this is not a proportionality inquiry.'" *Id.* (quoting *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, 488 F. Supp. 2d 719, 744 (N.D. Ill. 2007)).

Courts have routinely upheld the constitutionality of TCPA's statutory damages provision.[2] For example, in *Phillips*, the court explained that TCPA's statutory damage provision is constitutional because the amounts are high enough to further the statute's purpose and "the severity of the potential punishment is not out of proportion with the offense or obviously unreasonable, even where the transmission consists of a single page." *Phillips*, No. 06 C 4968, 2007 WL 129052, at *2; *see also Italia Foods Inc. v. Marinov. Enters., Inc.*, No. 07 C 2494, 2007 WL 4117626, at *4 (N.D. Ill. Nov. 16, 2007) (justifying the TCPA's statutory damages because "[t]he amount must be sufficient to serve as a disincentive to the practice of faxing unsolicited advertisements for any potential likely senders").[3]

Med1 argues that in spite of these cases the provision is unconstitutional because the legislative record contains no specific empirical findings to support imposition of a $500 penalty. Med1 contends that this is particularly egregious because the statutory penalty amounts to "approximately 2500 times the actual damage." (Mot. to Dismiss at 9). Med1 is correct that the congressional record does not include precise damage calculations, such as the cost of ink and paper for each unsolicited fax, however, the record does contain information to justify the damages amount. For example, Congress justified the penalty because unwanted faxes not only force a

---

[2] The courts that have found this provision unconstitutional all appear to have been reversed on appeal. *See Missouri ex. rel. Nixon v. Am. Blast Fax*, 196 F. Supp. 2d 920, 934 (E.D. Mo. 2002), *rev'd*, 323 F.3d, 649, 660 (8th Cir. 2003); *see also Rudgayzer & Gratt v. Enine, Inc.*, 749 N.Y.S2d 855 (Civ. Ct. 2002), *rev'd*, 779 N.Y.S.2d 882 (App. Term 2004); *The Chair King, Inc. v. GTE Mobilnet of Houston*, 135 S.W.3d 365 (Tex. App. 14th Dist. 2004), *rev'd*, 184 S.W.3d 707 (Tex. 2006).

[3] We acknowledge that much of Med1's motion focuses upon the alleged flawed reasoning of the court in *Kenro Inc.*, 962 F. Supp. 1162. (Mot. to Dismiss at 6-8). However, other courts in our district, such as in *Phillips* and *Italia Foods,* have upheld the statute based upon their own independent legal analysis, as we do here.

9

recipient to bear the costs of advertising, such as ink and paper, but also less quantifiable costs, such as the interference with and interruption of the recipient's actual business communications. H.R. Rep. No. 102-317, at 10, 25. Given Congress's explanation, we find that the amount is not so severely disproportionate to congressional concerns regarding junk faxes or so obviously unreasonable to make it unconstitutional. *See also Italia Foods*, No. 07 C 2494, 2007 WL 4117626, at *4 (finding no Due Process violation even though a defendant may be required to pay up to 30,000 times the recipient's actual cost of receiving an unwanted fax).

Med1 also argues that Supreme Court jurisprudence forbids damages which are so disproportionate to the actual harm suffered. To support this argument, Med1 cites to *BMW v. Gore,* 517 U.S. 559 (1996) and *State Farm Mutual v. Campbell*, 538 U.S. 408 (2003). Those cases are clearly distinguishable, however, because they involve the constitutionality of excessive punitive damages awarded by juries and not statutorily-prescribed damage awards. *See Arrez*, 522 F. Supp. 2d at 1008 ("[T]hose cases are not relevant to statutory penalties."); *Phillips,* No. 06 C 4968, 2007 WL 129052*,* at *2 ("[C]onsiderations pertinent to the validity of jury awards are not the same as those attendant to damage amounts by statute.").

Med1 claims that these cases are still relevant to class actions where statutory damages are aggregated to amounts which could potentially bankrupt a small business defendant. (Mot. to Dismiss Reply at 5). The Seventh Circuit has held, however, that such reasoning as applied to statutory damages is impermissible. *Murray v. GMAC*, 434 F.3d 948, 953 (7th Cir. 2006) (reversing district court decision that denied class certification even though the defendant would face billions of dollars for violations of the Fair Credit Reporting Act because "[t]he reason that damages can be substantial . . . does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize

awards as high as $1000 per person").[4]

For the reasons stated above, Med1's arguments are unavailing and we hold that the statute is constitutional.

### *3. Unsolicited Advertisement*

Med1 argues that even if the TCPA is constitutional, Plaintiff's claim must still be dismissed because the faxes at issue do not qualify as "unsolicited advertisements," as defined in the statute.

The statute defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without the person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). Thus there are at least two permissible fax types under the TCPA: (1) where the sender and the recipient have an established business relationship; or (2) if the fax is noncommercial in nature.

To qualify as the first permissible fax type, the FCC focuses on the relationship between the sender and the recipient to determine whether a fax qualifies as an "unsolicited advertisement." FCC Order at 3813-14. If the sender and the recipient already have an established business relationship, then the fax is deemed "transactional" and permitted. *Id.* In this case, Plaintiff alleges that he had no prior relationship with Med1 and that he had not authorized any fax transmission. (Compl. ¶ 10). Since we must accept all of Plaintiff's allegations as true at this stage of the proceedings, we may not dismiss Plaintiff's claim based upon an existing relationship with Med1.

---

[4] In any event, this argument is probably moot given that we are denying class certification.

Second, even without an established business relationship, a fax is not an "unsolicited advertisement" when it contains "messages that do not promote a commercial product or service." FCC Order at 3810; *see also Phillips Randolph Enters., LLC v. Adler-Weiner Research Chi., Inc.*, No. 06 C 5111, 2007 WL293928, at *1 (N.D. Ill. Jan. 30., 2007). For example, this includes "messages involving political or religious discourse, such as a request for a donation to a political campaign, political action committee or charitable organization." FCC Order at 3810. In addition, faxes are considered noncommerical if they are purely informational, such as industry news articles, legislative updates, or employee benefit information, and the sender's "primary purpose is informational, rather than to promote commercial products." *Id.* at 3814.

Med1 argues that Plaintiff's TCPA claim must be dismissed because the fax was noncommercial, since it did not promote a product or service, and because the faxes were merely informational. Plaintiff's complaint alleges that Med1, "as the entity whose products or services were advertised in the faxes, derived economic benefit from the sending of the faxes." (Compl. ¶ 10). In addition to the alleged economic benefit Med1 may have received from the faxes, an examination of the two identical faxes at issue appears to support to Plaintiff's allegations regarding the potential commercial in nature of the faxes.[5] Therefore, Plaintiff has adequately stated a claim that Med1's faxes amounted to a "unsolicited advertisements" under the TCPA, and Med1's motion to dismiss is denied.

---

[5] While we do not hold as a matter of law that the faxes at issue are "commercial" at this point in the litigation, the information in the faxes is sufficient to support the potential accuracy of Plaintiff's allegations. For example, the faxes explicitly state that Med1 is in the "Asset Acquisition Services" business and appear to use language that might be geared toward acquiring new customers. While Med1 does not list any prices on its forms, it does claim to pay "TOP DOLLAR" for used medical equipment, describes its company as "a better way to buy medical equipment," and urges recipients to "Call us!" or visit its website.

## CONCLUSION

For the reasons described above, we deny Med1's Motion to Strike Plaintiff's Preliminary Motion for Class Certification, Plaintiff's Preliminary Motion for Class Certification, and Med1's Motion to Dismiss. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Date: February 20, 2008