**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DR. FRANCIS SADOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 2973 |
| | ) | |
| MED1 ONLINE, LLC, and | ) | Judge Marvin E. Aspen |
| JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Presently before us are Dr. Francis Sadowski's ("Plaintiff") Motion for Class Certification and Med1Online, LLC's ("Defendant") Motion to Dismiss. For the reasons set forth below, we grant Plaintiff's Motion for Class Certification and deny Defendant's Motion to Dismiss.

## BACKGROUND

On March 31, 2008, we granted Plaintiff leave to filed his Second Amended Complaint. Plaintiff's Second Amended Complaint contains virtually identical allegations to his previous two complaints. Specifically, he alleges that Defendant and other unknown John Does 1-10 were responsible for sending two identical unsolicited faxes advertising Defendant's products, despite no prior relationship with Defendant. (2d Am. Compl. ¶¶ 4, 5, 9, 10, 13). In addition, he claims that Defendant has transmitted similar faxes to at least 40 other people in Illinois. (*Id.* ¶ 16). His complaint includes three counts: (1) violation of the Telephone and Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") ("Count I")), (2) violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") ("Count II"), and (3) a state law conversion claim ("Count

1

III").

Despite the fact that we denied Plaintiff's Preliminary Motion for Class Certification on February 20, 2008, Plaintiff now seeks class certification based upon the amended class definition in his Second Amended Complaint. In addition, on March 31, 2008, we permitted Defendant to file its Motion to Dismiss Counts II and III of the Second Amended Complaint for failure to state a claim.

## ANALYSIS

As indicated above, this Opinion decides two motions: (A) Plaintiff's Motion for Class Certification and (B) Defendant's Motion to Dismiss. We address each below.

### A. Plaintiff's Motion for Class Certification

Pursuant to Rule 23(a), a class may be certified "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). If the numerosity, commonality, typicality, and adequacy requirements are satisfied, the plaintiff must also demonstrate that the proposed class qualifies under at least one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 391 (N.D. Ill. 2006). Here, Plaintiff seeks certification under Rule 23(b)(3), which permits class actions where "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiff bears the burden of showing that the proposed class meets the requirements for certification and that the "class is indeed identifiable as a class." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *see also Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993); *Hernandez v. Midland Credit Mgmt., Inc.*, 236 F.R.D. 406, 410 (N.D. Ill. 2006). In evaluating a motion for class certification, we accept as true all allegations made in support of certification and do not examine the merits of the case. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 2152-53 (1974); *Retired Chi. Police Ass'n*, 7 F.3d at 598. In addition, we retain broad discretion in determining whether class certification is appropriate given the particular facts of the case. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998); *Cavin*, 236 F.R.D. at 391; *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 298 (N.D. Ill. 2005).

On February 20, 2008, we held that Plaintiff's class definition[1] was not sufficiently identifiable because it required us to investigate the relationship between Defendant and each potential class member. *See Sadowski v. Med1 Online, LLC*, No. 07 C 29783, 2008 WL 489360, at *3 (N.D. Ill. Feb. 20, 2008). Subsequently, Plaintiff amended his class definition to include:

> "(a) all persons with Illinois fax numbers; (b) who, during October, 2006 (c) were sent faxes in the form attached as Exhibits A-B by or on behalf of defendant Med 1 Online promoting its goods or services for sale."

---

[1] Plaintiff's previous class definition included: "(a) all persons with Illinois fax numbers; (b) who, on or after a date four years (Telephone Consumer Protection Act - Count I), three years (Illinois Consumer Fraud Act - Count II), or five years (conversion - Count III), prior to the filing of this action, (c) were sent advertising faxes by defendant ***(d) and with respect to whom defendant cannot provide evidence of express consent or an established business relationship prior to the transmission of the faxes.***" (Prelim. Class Cert. Mot. at 1) (emphasis added).

3

(Class Cert. Mot. at 1). Thus, Plaintiff has eliminated the fourth prong from its previous definition in hopes that this will create a sufficiently identifiable class to permit class certification.

Defendant now argues that Plaintiff's motion for class certification should be denied because his class definition fails to establish a legal claim and he has not shown the Rule 23 requirements of numerosity, commonality, and typicality.[2]

*1. Class Definition*

Defendant argues that because the amended class definition does not reference a lack of business relationship with Defendant it fails to establish a legal claim. Defendant claims that "Plaintiff's proposed amended class definition must include some mention of each element of the legal claim relied upon in order to establish a proper class definition that meets the mandatory tests to certify a class." (Class Cert. Resp. at 3). We disagree. While we acknowledge that a fax must be "unsolicited" in order to recover under the TCPA, there is no requirement in Rule 23 that Plaintiff's class must be defined in terms of the statute allegedly violated. *See* Fed. R. Civ. P. 23(a), (b). To the contrary, as we held in our February 20, 2008 opinion, defining a class in terms of the elements of a statute would be the "equivalent to deciding the merits of class members' claims," and thus impermissible. *Foreman v. Pra III, LLC*, No. 05 C 3372, 2007 WL 704478, at *6 (N.D. Ill. Mar. 5, 2007). So long as Plaintiff can establish the requirements of Rule 23, as we discuss below, then class certification is proper.

---

[2] Defendant does not dispute that Plaintiff has met the adequacy requirement of Rule 23(a)(4). (*See* Class Cert. Resp. at 11).

## 2. Rule 23 Requirements

### a. Numerosity

According to the first requirement of Rule 23(a)(1), a class may only be certified if it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002). In addition, while "[i]t is not required that the plaintiff know the precise number of class members, . . . a mere conclusory allegation that joinder is impractical or speculation as to the size of the class is insufficient." *Id.*; *see also Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989).

Plaintiff argues that it has established that joinder of all class members is impracticable because Defendant contracted with WestFax to send at least 380,919 faxes over a three day period. (Class Cert. Mot. at 5; Class Cert. Reply at 1). He argues that because 4.3% of the country's population is located in Illinois and Defendant made no attempt to exclude Illinois residents, it is reasonable to estimate that at least 10,000 Illinois residents received the faxes at issue. (Class Cert. Reply at 5). Thus, Plaintiff claims he has more than satisfied its allegations of proving that at least 40 persons in Illinois are members of the class.

While Defendant does not deny the possibility that at least 380,900 faxes were sent nationwide, it nonetheless claims that Plaintiff's class size amounts to nothing more than speculation because the list of specific fax numbers that received the faxes at issue no longer exists. (Class Cert. Resp. at 7). Thus, it claims that Plaintiff cannot demonstrate that anyone in Illinois other than himself received these faxes, despite 18 months of discovery. (*Id.* at 6).

While we agree that Plaintiff's allegations regarding numerosity amount to estimates, we

find that they amount to more than mere conclusory allegations or speculation. *See Marcial*, 880 F.2d at 957. We find that common sense allows us to infer that of the 380,919 faxes sent, a good number of those were received by Illinois residents. *See Rahman v. Chertoff*, 244 F.R.D. 443, 450 (N.D. Ill. 2007) (finding that the plaintiff was able to establish "beyond mere speculation that the size of [its] putative classes [was] sufficiently large" based upon statistical percentages); *Ringswald v. County of DuPage*, 196 F.R.D. 509, 511-12 (N.D. Ill. 2000) (examining statistics regarding population of counties and numbers of criminal detainees to allow common sense conclusion that class consisted of at least hundreds of people who were charged an unlawful fee); *see also* Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 3:5 (4th ed. 2007) ("While the plaintiff has the burden of showing that joinder is impracticable, a good-faith estimate should be sufficient when the number of class members is not readily ascertainable."). In addition, we find that it would be unfair to hold otherwise given that the missing list of recipients was last in Defendant's possession.

## 2. *Commonality*

Rule 23(a)(2) requires that there be at least one question "of law or fact common to the class," and is satisfied by showing "a common nucleus of operative fact." *Keele*, 149 F.3d at 594. Here, Plaintiff's proposed class consists of those Illinois residents who received Defendant's faxes as part of the same October 2006 advertising campaign. Thus, all class members claims' arise from the same transaction or occurrence (i.e., they all received the same faxes as a result of the same advertising campaign). Therefore, we find that this requirement has been met.

Defendant argues that Plaintiff has not established the commonality requirement because

in order to qualify as a member of the class, each potential plaintiff would have to prove "'whether a specific transmission to its machine was without express invitation or permission on its part.'" (Class Cert. Resp. at 9 (quoting *Forman v. Data Transfer Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995)). While we agreed with this reasoning in our February 20, 2008 opinion, Plaintiff's amended class definition has eliminated this concern because the class is no longer defined in terms that would essentially require us to decide the merits of each potential class member's claim to decide if they were part of the class. *Sadowski*, No. 07 C 29783, 2008 WL 489360, at *4 (finding class definition unidentifiable because it "would involve highly fact-specific inquiries into the circumstances surrounding the transmission of each fax stage)*; see also Foreman v. Pra III, LLC*, No. 05 C 3372, 2007 WL 704478, at *6 (N.D. Ill. Mar. 5, 2007) (distinguishing the class in *Kenro* from the class at issue because "the class definition does not so closely track the language of the relevant statute . . . as to indicate that evaluating class membership will be equivalent to deciding the merits of class members' claims").

*3. Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This inquiry "primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as claims of the class at large." *Retired Chi. Police Ass'n*, 7 F.3d at 597.

Defendant makes the same arguments against typicality that it does against commonality: that Plaintiff's claim is not typical because we will have to determine whether each class member gave defendant permission to determine class membership. For the reasons stated above, this argument is unpersuasive in light of Plaintiff's amended class definition. In addition, the fact

that Defendant may be able to argue later that it has an established business relationship with some class members does not prevent a finding of typicality at this stage of proceedings. This is because Defendant ultimately has the burden of proof regarding this defense, *see In re Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 & the Junk Fax Prevention Act of 2006*, 21 F.C.C.R. 3787, 3794 (Apr. 6, 2006), and typicality "should be determined with reference to defendant's actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996); *see also Ramirez v. NutraSweet Co.*, No. 95 C 130, 1996 WL 529413, at *3 (N.D. Ill. Sept. 11, 1996) ("Contrary to Defendant's assertion it is well-settled and clear that unique defenses do not necessarily preclude the court's finding of typicality; 'it is only when a unique defense will consume the merits of a case that a class should not be certified.'"). Plaintiff's claims and the other proposed class members' claims all arise from Defendant's October 2006 fax campaign. Therefore, Plaintiff's claim is typical of the class.

### *4. Predominance and Superiority*

Because Plaintiff is seeking certification under Rule 23(b)(3), he also must show that "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). While Defendant does not specifically address these requirements in its response, it appears to adopt the same arguments that it used to contest the commonality and typicality arguments above. (*See* Class Cert. Resp. at 10).

First, predominance requires that Plaintiff "show that common issues not only exist but

outweigh the individual questions." *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 529-30 (N.D. Ill. 1998). Common questions in this case will include how numbers were generated from Defendant's database and whether Defendant's actions amounted to conversion and violated the TCPA and ICFA. While eventually we may have to investigate whether each claimant had an established business relationship with the Defendant, there is currently no evidence before us that "resolution of the individual issues will consume more time or resources than the resolution of common issues." *Hinman v. M & M Rental Ctr., Inc.*, No. 06 C 1156, 2008 U.S. Dist. LEXIS 27835, at *11 (N.D. Ill. Apr. 7, 2008). For example, this issue might be resolved by examining the source of the numbers in the database as well as how Defendant selected who was to receive the October 2006 faxes.

In addition, class treatment appears to be the superior method of handling Plaintiff's claims. In consumer actions involving small individual claims, such as this one, class treatment is often appropriate because each member's damages "may be too insignificant to provide class members with incentive to pursue a claim individually." *Murray*, 232 F.R.D. at 303 (internal quotations omitted); *see also Hinman*, No. 06 C 1156, 2008 U.S. Dist. LEXIS 27835, at *11-12 ("[R]esolution of the issues on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources.").[3]

---

[3] In assessing predominance and superiority, one of the factors listed in Rule 23(b)(3) is "the difficulties likely to be encountered in the management of a class action." We note that while Plaintiff has satisfied the requirements for class certification, if practical issues arise later in the course of litigation, such as how to ensure proper notice to class claimants if no information regarding their identities is recovered after further discovery, we reserve the right to revisit whether the class action is the superior method for this particular case.

**B. Defendant's Motion to Dismiss Counts II and III**

Defendant argues that we should dismiss Plaintiff's complaint because: (1) his ICFA and conversion claims are subsumed by his TCPA claims; (2) he has failed to state an ICFA claim; and (3) he has failed to state a claim for conversion. We address these arguments below.

*1. Standard of Review*

A court may grant a motion to dismiss under Federal Rule of Procedure 12(b)(6) when "it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). The purpose of a motion to dismiss under 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

*2. Plaintiff's TCPA claims do not subsume his ICFA and conversion claims.*

Defendant argues that we should dismiss Counts II and III because they are subsumed by Plaintiff's TCPA claim. As an initial matter, we note that while Defendant mentions this argument on the first page of its Motion to Dismiss, the rest of its motion fails to address this point. (Mot. to Dismiss at 1). In fact, Defendant does not offer any support for this argument until its reply brief. (Mot. to Dismiss Reply at 13-14). However, it is improper to raise an argument for the first time in a reply because it deprives the plaintiff of an opportunity to respond. *See Polansky v. Anderson*, No. 04 C 3526, 2006 WL 2038603, at *6 n.6 (N.D. Ill. July 19, 2006).

Nonetheless, even addressing this argument we find that it lacks merit. Defendant relies on *NAACP v. American Family Mutual Insurance Co.*, 978 F.2d 287 (7th Cir. 2000) to argue that because all three counts involve the same set of facts, they cannot all be pled in federal court. *NAACP* is distinguishable, however, because it involved whether a "final judgment" under Rule 54(b) had issued to permit appellate jurisdiction and not whether a count must be dismissed at the motion-to-dismiss stage. In *NAACP*, the Seventh Circuit distinguished between a "claim for relief" and a "cause of action," and held that a district court's decision is not appealable if the district court retains other counts that involve substantially similar facts. *Id.* at 291-93. Here, even though Counts I, II, and III are all premised on the same set of facts, "so long as plaintiffs' allegations state a claim for relief under some theory, it is immaterial at the motion-to-dismiss stage to rule on whether they could or could not recover under all of the potential theories presented on the same set of facts." *Marcavage v. City of Chi.*, 467 F. Supp. 2d 823, 834 (N.D. Ill. 2006).

### 3. ICFA

The ICFA prohibits "unfair or deceptive acts or practices, including . . . misrepresentation or the concealment, suppression or omission of any material fact . . . in the conduct of any trade or commerce." 815 ILCS 505/2. As many courts have observed, we should liberally construe the ICFA, utilizing it "to the greatest extent possible to eliminate all forms of deceptive or unfair business practices." *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 654-55, 762 N.E.2d 1, 11-12 (2001) (internal citations omitted); *see also Thacker v. Menard, Inc.*, 105 F.3d 382, 386 (7th Cir. 1997); *Barr v. Safeco Ins. Co. of Am.*, 583 F. Supp. 248, 257 (N.D. Ill. 1984).

Here, Plaintiff alleges that Defendant "engaged in unfair acts and practices . . . by sending unsolicited fax advertising to plaintiff and others." (2d Am. Compl. ¶ 33). Specifically, he alleges that this practice was "unfair" because it is "contrary to public policy, unscrupulous, [] caused injury to recipients of their advertising" by requiring recipients "to bear the cost" Defendant's advertising, and thus gave "defendants an unfair competitive advantage over businesses that advertise lawfully." (*Id.* ¶¶ 35, 38). Defendant argues that Plaintiff has failed to establish a claim under the ICFA because he did not allege adequately that the transmission of the fax was an "unfair" act[4] and that Defendant had the requisite intent.

Illinois courts examine three factors to determine whether a practice is "unfair" under the ICFA: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18, 775 N.E.2d 951, 960-61 (2002) (citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5, 92 S. Ct. 898 (1972)); *see also Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, No. 07 C 1611, 2008 WL 597604, at *8 (N.D. Ill. Mar. 3, 2004). "'[A] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.'" *Robinson*, 201 Ill. 2d at 418, 775 N.E.2d at 961 (quoting *Cheshire Mortgage Serv., Inc. v. Montes*, 612 A.2d 1130, 1143-44 (Conn. 1992)).

*a. Public Policy*

A practice offends public policy if "it violates a standard of conduct set out by an existing

---

[4] Defendant also argues that Plaintiff's allegations are not specific enough because he merely alleges that Defendant "engaged in unfair acts and practices," which is an improper legal conclusion. (Mot. to Dismiss Reply at 3).

12

statute or common law doctrine that typically governs such situations." *W. Ry. Devices Corp. v. Lusida Rubber Prods., Inc.*, No. 06 C 0052, 2006 WL 1697119, at *4 (N.D. Ill. June 13, 2006). This factor weighs in Plaintiff's favor because sending unsolicited faxes is considered unlawful under both the TCPA and Illinois law, 720 ILCS 5/26-3. *See Centerline*, No. 07 C 1611, 2008 WL 597604, at *8.

*b. Oppressive*

As indicated above, the second factor in the *Robinson* analysis looks at whether Defendant's actions are "immoral, unethical, oppressive, or unscrupulous." *Robinson*, 201 Ill. 2d at 417-18, 775 N.E.2d at 961. "Conduct is oppressive only if it imposes a lack of meaningful choice or an unreasonable burden on its target." *Centerline*, No. 07 C 1611, 2008 WL 597604, at *8; *see also Robinson*, 201 Ill. 2d at 419-20, 775 N.E.2d at 962. Plaintiff alleges that Defendant's conduct was "unscrupulous" and unfair because it shifted its advertising costs to recipients. (2d Am. Compl. ¶¶ 35, 38, 39). Defendant argues that these allegations are not sufficient to properly plead "oppressiveness" and that the transmission of two single-page faxes is not "oppressive" under the ICFA as a matter of law.

First, Defendant claims that Plaintiff's allegations contain insufficient facts regarding the oppressiveness of receiving Exhibits A and B. (Mot. to Dismiss Reply at 4-5). However, even though ICFA claims often involve fraud and Rule 9(b) requires fraud to be pled with particularity, courts in our district have held that there is no heightened pleading requirement when an ICFA claim alleges an unfair practice, such as in this case, rather than a deceptive one. *See Thomas v. Arrow Fin. Servs., LLC*, No. 05 C 5699, 2006 WL 2438346, at *7 (N.D. Ill. Aug. 17, 2006) ("Allegations of unfair acts under the ICFA do not need to comply with Rule 9.");

13

*Strohmaier v. Yemm Chevrolet*, 211 F. Supp. 2d 1036, 1043 (N.D. Ill. 2001) ("[S]ome claims that arise under the ICFA may not be fraud claims and may fall outside the scope of Rule 9(b)."); *Gaddy v. Galarza Motor Sport L.T.D*, No. 00 C 3893, 2000 WL 1364451, at *4 (N.D. Ill. Sept. 20, 2000) (finding that Rule 9(b)'s pleading standards "inapplicable" because the ICFA "prohibits not only fraud, but a broad array of unfair practices"). Therefore, Plaintiff's allegations are sufficient to satisfy the federal notice pleading requirements. *See* Fed. R. Civ. P. 8(a).

Defendant also argues that, as a matter of law, faxes that include removal numbers are not "oppressive." Defendant relies upon nonprecedential cases that hold that including a removal number on unsolicited faxes defeats oppressiveness because it creates a "reasonable alternative to the receipt of additional messages." *Lusida*, No. 06 C 0052, 2006 WL 1697119, at *5 (citing *Whiting Corp. v. MSI Marketing, Inc.*, No. 02 CH 6332, slip op. at 17-18 (Ill. Cir. Ct. Apr. 3, 2003)). Defendant also distinguishes the recent *Centerline* decision, which held that unsolicited faxes can be "oppressive," by arguing that the faxes at issue in that case did not include removal numbers. (Mot. to Dismiss Reply at 5); *see also Centerline*, No. 07 C 1611, 2008 WL 597604, at *8.

However, we find this reasoning unpersuasive, especially at this stage of the proceedings. Even if a recipient of an unsolicited fax can later remove himself from the possibility of receiving future faxes, this does nothing to compensate the recipient for the injury that has already resulted from the receipt of the fax in the first place. *See Tudor v. Jewel Food Stores, Inc.*, 288 Ill. App. 3d 207, 211, 681 N.E.2d 6, 8-9 (3d Dist. 1997) (finding that grocery store overcharges were not oppressive because customers were issued receipts and money-back

guarantees for errors). In addition, the court in *Centerline* did not find oppressiveness merely because the fax failed to include a removal number. To the contrary, the court distinguished *Tudor*, and held that because there were no "procedures set up to compensate recipients for the losses incurred as a result of the unwanted faxes," the plaintiff's complaint contained adequate allegations of oppressiveness. *Id.* We agree with the reasoning in *Centerline*, and find that Plaintiff's allegations are enough to show that he was deprived of "any meaningful choice," because, while it is possible that he may be able to avoid future faxes,[5] he was not able to avoid the original faxes and there is no evidence that he was somehow compensated for his losses.

Defendant also argues that two one-page faxes cannot be oppressive as a matter of law because they only cause minimal disruption. (Mot. to Dismiss Reply at 5 (citing *Weiss, Dvorak & Dusek v. Human Res. Store, Inc.*, No. 03 CH 21867 (Ill. Cir. Ct. Oct. 12, 2004))). In *Weiss*, the circuit court stated, without citing support, that sending one three-page fax "does not rise to the level of oppression envisioned by the drafters of ICFA." *Weiss*, No. 03 CH 21867, slip op. at 13. However, because the ICFA was designed to protect consumers, we are instructed by the Illinois Supreme Court to interpret the ICFA liberally, and we must accept all of Plaintiff's well-pled allegations as true for purposes of a 12(b)(6) motion to dismiss. As a result, we find his allegations sufficient to demonstrate this *Robinson* factor.

c. *Substantial Injury*

Defendant argues that Plaintiff has failed to allege a substantial injury to consumers. A practice may cause substantial injury to consumers as a whole, even if only "very small

---

[5] We note that the parties dispute the effectiveness of the removal numbers. However, we need not resolve this issue here.

15

individual harms." *Centerline*, No. 07 C 1611, 2008 WL 597604, at *9 (citing *People ex rel. Hartigan v. Stianos*, 131 Ill. App. 3d 575, 581, 475 N.E.2d 1024, 1029 (2d Dist. 1985)). Here, Plaintiff has alleged that "Plaintiff and each class member suffered damages . . . in the form of paper and ink consumed." (2d Am. Compl. ¶ 36). While Defendant argues that Plaintiff himself has not suffered a substantial injury since he only received two faxes, we must look to the injury of the whole class as well as the injury to consumers. *See Robinson*, 201 Ill. 2d at 418 (holding that third factor is "whether it causes substantial injury to **consumers**" (emphasis added)). Thus, Plaintiff's complaint adequately alleges that he suffered substantial injury.

*d. Intent*

Defendant finally argues that we must dismiss Plaintiff's ICFA claim because he has not pled that Defendant had the requisite intent. (Mot. to Dismiss at 7). As we indicated above, to plead an unfair act Plaintiff need only satisfy the notice pleading requirements of Rule 8(a). In addition, intent is not a material fact under the ICFA. *See Roberts v. Robert V. Rohrman, Inc.*, 909 F. Supp. 545, 549-50 (N.D. Ill. 1995); *Heastie v. Comm. Bank of Greater Peoria*, 727 F. Supp. 1133, 1139 (N.D. Ill. 1989); *see also Dwyer v. Am. Exp. Co.*, 273 Ill. App. 3d 742, 749, 652 N.E.2d 1351, 1357 (1st Dist. 1995). Instead, the ICFA only requires that the defendant act "with intent that others rely upon" the unfair practice at issue. 815 ILCS 505/2; *see also Dwyer*, 273 Ill. App. 3d at 749 ("A party is considered to intend the necessary consequences of his own acts or conduct."). Thus, for purposes of the Defendant's 12(b)(6) motion Plaintiff's allegations are sufficient.

*4. Conversion*

To state a claim for conversion a plaintiff must allege: "(1) an unauthorized and

wrongful assumption of control, dominion, or ownership by defendant over its property; (2) its right to the property; and (3) its right to immediate possession of the property, absolutely, and unconditionally." *Centerline*, No. 07 C 1611, 2008 WL 597604, at *10 (citing *Gen. Motors Corp. v. Douglass*, 206 Ill. App. 3d 881, 886, 565 N.E.2d 93, 96-97 (1st Dist. 1990)). Defendant argues that Plaintiff has failed to state a claim for conversion because he has not alleged conversion of any specific chattel that can be the subject of a conversion claim and that he made the required demand for return of his property. (Mot. to Dismiss at 1-2).[6] We address these arguments below.

*a. Specific Chattel*

For an object to be the subject of a conversion claim it must be a "specific chattel," which is "an identifiable object of property of which the plaintiff was wrongfully deprived." *In re Thebus*, 108 Ill.2d 255, 260, 483 N.E.2d 1258, 1260 (Ill. 1985); *see also Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) (noting that a plaintiff can only state a conversion claim for money if the money is "a specific fund or specific money in coin or bills" versus an indeterminate sum). Defendant argues that the subject of Plaintiff's conversion claim, ink or toner and paper, are not the type of "specific chattel" that can be the subject of a conversion claim because they are fungible and not easily segregated. (Mot. to Dismiss at 8). However, we

---

[6] Defendant also appears to be arguing that Plaintiff cannot state a claim for conversion because Plaintiff's loss is *de minimis*. *See Rosario Fine Jewelry, Inc. v. Paddock Publ'ns, Inc.*, 443 F. Supp. 2d 976, 980 (N.D. Ill. 2006) (noting that maxim "*de minimis non curat lex*" should apply to plaintiff's conversion claim because ink and paper used to generate one-page fax was "niggling"). However, we agree with the court in *Centerline* that "Illinois law does not require application of the *de minimis* rule to class conversion claims founding upon very small individual losses, so long as those losses can plausibly be inferred to be substantial in the aggregate." *Centerline*, No. 07 C 1611, 2008 WL 597604, at *10.

find that the amount of Plaintiff's ink or toner and paper used to print Defendant's two faxes are sufficiently tangible and specific to state a claim for conversion. *See Centerline*, No. 07 C 1611, 2008 WL 597604, at *11 ("Thus the paper and toner resembles 'specific money in coin or bills' which can be the subject of a conversion action under Illinois law." (quoting *Horbach*, 288 F.3d at 978)).

*b. Demand*

Defendant argues that Plaintiff cannot state a claim for conversion because he does not allege that he demanded the return of any toner or paper that was allegedly converted. (Mot. to Dismiss at 8). While some Illinois courts require a demand in order to state a claim for conversion, a demand is not required if it would be futile. *See Monroe Cty Water Co-op. v. City of Waterloo*, 107 Ill. App. 3d 477, 480, 437 N.E.2d 1237, 1240 (5th Dist. 1982). For example, a demand is "useless" where a defendant has altered a plaintiff's property so that it can no longer be returned "in its unaltered state." *Loman v. Freeman*, No. 104289, — N.E.2d —, 2008 WL 1746680, at *13 (Ill. Apr. 17, 2008) (finding plaintiff's conversion claim allegation sufficient in spite of fact that did not make demand for return of horse after defendant allegedly performed operation which made horse unsuitable for racing); *see also Brill v. Becktold Enters., Inc.*, 06 CH 1520, slip op. at 8 (finding that plaintiff was not required to demand the return of toner and paper because "[o]nce the advertisements were printed out by the fax machines, the paper and toner were irretrievably lost"). Here, Plaintiff is alleging that Defendant converted his paper and toner by making them "unusable." (2d Am. Compl. ¶ 50). Plaintiff is not alleging that Defendant is still in possession of its converted property. Instead, like in *Loman*, Plaintiff is pursuing a claim for conversion by destruction or alteration, *see* Restatement (Second) of Torts § 226 (1965). A

demand would have been futile because not only was Defendant never in possession of these objects, but after they were used to print Defendant's advertisements, Defendant could no longer return them in their unaltered state. Therefore, we find that Plaintiff was not required to allege that he demanded the return of his toner and paper.

## CONCLUSION

For the reasons described above, we grant Plaintiff's Motion for Class Certification and deny Defendant's Motion to Dismiss. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Date: May 27, 2008